Peggy **HILLIARD**, Individually and as Guardian Conservator of the Estate of Thomas Roger Lee, a mentally incompetent adult, Thomas Roger Lee, and Terry Hilliard, Plaintiffs,

v.

**WALKER'S PARTY STORE, INC.**, Thomas Pound, Richfield Township Police Department, Davison Township Police Department, Larry Gritzinger, David Skarbek, and Brian Illig, Defendants,

and

**RICHFIELD TOWNSHIP POLICE DE-PARTMENT** and Larry Gritzinger, Third–Party Plaintiffs,

v.

Roy Stacy **LEE**, Third–Party Defendant.

Civ. A. No. 91–CV–40584–FL.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 4, 1995.

Andrew S. Muth, Ypsilanti, MI, for plaintiffs.

Audrey J. Forbush, Bloomfield Hills, MI, H. William Reising, Flint, MI, Joseph Kochis, Grand Blanc, MI, for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, Senior District Judge.

Before the Court are two motions for summary judgment (D.E. # 143 and D.E. # 145). The moving parties consist of all remaining defendants, including three individual police officers and their respective police departments. Both motions have been fully briefed, with several supplemental submissions having been made by the parties. A hearing regarding these motions was held on May 2, 1995. For the reasons stated on the record, and for those that follow, both motions are GRANTED IN PART and DENIED IN PART.

### I. *Facts*

■ This action arises out of a single vehicle automobile accident which occurred on October 1, 1989, from which plaintiff Thomas Roger Lee sustained permanent and serious injuries.[1] Earlier that night, on the evening of September 30, 1989, plaintiff Thomas Lee drove his car to the residence of Thomas Pounds to attend a party. There is no dispute that there was alcohol present at the party, and that plaintiff Thomas Lee had been drinking that evening. The extent of plaintiff Thomas Lee's lucidity, however, is a material fact in dispute between the parties.

---

**1.** As required in review of a motion brought pursuant to Fed.R.Civ.P. 56, the evidence is viewed in the light most favorable to the plaintiffs' position, all reasonable inferences being resolved in plaintiffs' favor.

Apparently responding to a neighbor's complaint, the police were summoned to the Pounds residence on two occasions that evening. On the first occasion, at approximately 10:15 p.m., Richfield Township Police Officer Larry Gritzinger, a defendant herein, observed no sign of alcohol present and simply told Thomas Pounds to shut the party down. At approximately 11:40 p.m., defendant Gritzinger returned to the Pounds residence, accompanied by defendants David Skarbek and Brian Illig, both Davison Township police officers, as backup. Between approximately 11:40 p.m. and 12:20 a.m., the police officers proceeded to "close down" the party, sending all present on their way. At one point, defendant Gritzinger confronted plaintiff Thomas Lee directly, indicating that he should leave the premises at once. While the direct contact between the other two defendant officers and plaintiff Thomas Lee is in dispute, it is clear that they took part in dispersing the crowd gathered at the Pounds residence.

The deposition testimony cited by the parties indicates that plaintiff Thomas Lee left the premises shortly after defendant Gritzinger, the last police officer to leave the scene. There is evidence that the police threatened to arrest anyone or impound any cars remaining at the premises upon their imminent return. Plaintiff Thomas Lee drove himself and a friend to another party, and then drove his friend home, before proceeding towards his own home by car. It was during this last leg of plaintiff Thomas Lee's journey that the accident occurred, a result either of exhaustion or intoxication. Shortly after the accident, plaintiff Thomas Lee's blood-alcohol level greatly exceeded the legal limit.

Through their motions, defendants challenge plaintiffs claims made under counts V, VI, VII, VIII, and IX.

## II. *State Tort Claims*

### A. *Duty Under State Law*

In count V of their complaint, plaintiffs claim that the individual police officer defen-

dants breached a statutory duty owed to plaintiff Thomas Lee, and the general public, to take him into custody as one being incapacitated in a public place. *See* M.C.L. § 333.6501. Plaintiffs allege that this failure to act as prescribed by state statute amounted to gross negligence on the part of the officers and that such negligence was a proximate cause of plaintiff Thomas Lee's injuries.

Defendants move for summary judgment on count V, arguing that the facts clearly establish that plaintiff Thomas Lee was not incapacitated when the police officers were at the Pounds residence. (Defendants Richfield Township Police Department and Larry Gritzinger's motion brief at 9 (hereinafter "Richfield defendants' MSJ"); Defendants Davison Township Police Department, David Skarbek, and Brian Illig's motion brief at 11 (hereinafter "Davison defendants' MSJ")).[2] In their argument, defendants note an important distinction between "intoxicated" and the statutorily-defined term "incapacitated." M.C.L. § 333.6501 provides, in relevant part, that:

> (1) An individual who appears to be incapacitated in a public place shall be taken into protective custody by a law enforcement officer and taken to an approved service program, or to an emergency medical service ....

For purposes of this statute,

> "Incapacitated" means that an individual, as a result of the use of alcohol, is unconscious or had his or her mental or physical functioning so impaired that he or she either poses an immediate and substantial danger to his or her own health and safety or is endangering the health and safety of the public.

M.C.L. § 333.6104(3). Plaintiffs argue that despite the deposition testimony cited by defendants in support of their position, there is

---

**2.** Defendants challenge only whether plaintiff Thomas Lee satisfied the statutory definition of "incapacitated." The Court notes that none of the parties have addressed whether plaintiff Thomas Lee was at any time during contact with the officers "in a public place," a further requirement of the statute in question. This issue cer-

tainly appears to be relevant to plaintiffs' claim under count V and should be addressed by the parties at the upcoming hearing. The issue was not incorporated into defendants' summary judgment motions and is not considered in the Court's disposition of these motions.

ample evidence displaying, at a minimum, a question of fact as to whether plaintiff Thomas Lee was incapacitated. (Plaintiffs' response at 4).

■ The Court agrees with plaintiffs that there is a factual dispute regarding plaintiff Thomas Lee's condition at the time he came into contact with the officers at the Pounds residence. Significantly, however, the parties should be aware that the factual question to be resolved is not whether plaintiff Thomas Lee *was* incapacitated, but whether he "*appear[ed] to be* incapacitated" at the time he was confronted by the officers. Of course, if he did appear to be mentally or physically impaired to the extent that he posed an immediate and substantial danger to his or the general public's health and safety, plaintiffs still must prove further that the officers' failure to recognize his condition—or take him into custody if they did, in fact, recognize his condition—constituted "gross negligence or willful and wanton misconduct," M.C.L. § 333.6508, that was a proximate cause of plaintiff Thomas Lee's injuries, *see* M.C.L. § 691.1407(2) (governmental immunity statute).[3] Given the facts and expert testimony cited by both plaintiffs and defendants, the Court finds these matters are best left to resolution by the finder of fact at trial.

■ Regarding count V, defendants Skarbek and Illig also argue that there is no evidence that either of them had any personal contact with plaintiff Thomas Lee. (Davison defendants' MSJ at 15). Logically, if neither of them had personal contact with Thomas Lee, then neither of them could have had a duty to take him into custody. Plaintiffs contest this factual assertion, however,

citing to deposition testimony indicating that there were two officers who confronted plaintiff Thomas Lee, and that they wore different uniforms. (See plaintiffs' response at 6–8). Because defendant Gritzinger has admitted that he did, in fact, converse with plaintiff Thomas Lee, if plaintiffs' witnesses are credible, then either defendant Skarbek or defendant Illig also was present to observe plaintiff Thomas Lee's appearance. While it may be impossible to determine which of the two Davison Township officers was present to observe plaintiff Thomas Lee—as it is from the paper record now available to the Court—the determination as to which witnesses are either lying or mistaken is one left to observation of the witnesses at trial. The evidence proffered by plaintiffs is sufficient to withstand summary judgment.

Thus, defendants' motions are DENIED as to count V.

### B. *Governmental Immunity*

In their briefs, the defendant officers all argued that, pursuant to M.C.L. § 691.1407(2), they are entitled to governmental immunity from any tort liability that might flow from their actions on the night of September 30, 1989.[4] That statute provides, in relevant part, that:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency ... shall be immune from tort liability for injuries to persons or damages to property caused by the officer ... while in the course of employment ... if all of the following are met:

**3.** While not addressed by the parties, the statute requiring the police to take into protective custody incapacitated persons, M.C.L. § 333.6501, *et seq.*, does not create a private right of action. Section 333.6508 provides for immunity except under certain limited circumstances. Presumably, failure to comply with the statute would be negligence *per se*, constituting strong evidence of an officer's negligence, *see Klanseck v. Anderson Sales*, 426 Mich. 78, 86–90, 393 N.W.2d 356 (1986); *Zeni v. Anderson*, 397 Mich. 117, 128–29, 243 N.W.2d 270 (1976), but still must be treated as any other tort brought against a state officer and subject to governmental immunity, as con-

ferred by M.C.L. § 691.1407(2). *See* discussion of governmental immunity, *infra*. As the parties have not addressed this issue, it would be an appropriate subject addressed in the parties' trial briefs.

**4.** At the hearing, defendants conceded that in light of the Michigan Supreme Court's holding in *Dedes v. Asch*, 446 Mich. 99, 521 N.W.2d 488 (1994), the argument that plaintiffs' state law claims must be dismissed because their conduct was not the sole proximate cause of plaintiff Thomas Lee's injuries must fail.

(a) The officer ... is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's ... conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

M.C.L. § 691.1407(2).

█ There is no dispute that, at all times while present at the Pounds residence, all three defendant officers were acting within the scope of their authority in the exercise of a governmental function. Defendant Gritzinger argues that any conduct on his part was not "the" proximate cause of plaintiffs' injuries or damages. (Richfield defendants' MSJ at 18–23, relying upon *Dedes v. South Lyon Comm. Schools,* 199 Mich.App. 385, 502 N.W.2d 720 (1993)). Defendants Skarbek and Illig make the same argument (Davison defendants' MSJ at 18–22), in addition to arguing that, as they had no contact with plaintiff Thomas Lee, there is no evidence of gross negligence on their part toward him. (Davison defendants' MSJ at 17–18). Because since the briefing of the issue the relevant Michigan law has been interpreted by the Michigan Supreme Court in a manner contrary to defendants' proximate cause argument, *see Dedes v. Asch,* 446 Mich. 99, 118, 521 N.W.2d 488 (1994) (reversing Court of Appeals, holding to avoid governmental immunity defendant's gross negligence need only be "a" proximate cause of plaintiff's injuries or damages), the argument must fail. Moreover, as discussed *supra,* defendants Skarbek's and Illig's claim that they had no contact with plaintiff Thomas Lee is a disputed fact that must be resolved at trial.

In *Dedes,* the Supreme Court held that section 691.1407(2)(c) of the governmental liability statute "is not to be read to limit recovery if the plaintiff or another is also a cause of the accident," nor is it "to be read to prevent a defendant from claiming comparative negligence as a defense." 446 Mich. at 118, 521 N.W.2d 488. Thus, defendants' argument that the defendant officers are entitled to governmental immunity because their conduct—as alleged and characterized by plaintiffs—is not the sole proximate cause of plaintiffs' damages is rejected by *Dedes.* As discussed *supra,* whether the defendant officers' conduct was grossly negligent, as defined by the statute and, if so, whether that conduct was a proximate cause of plaintiffs' damages are disputed factual questions requiring resolution by trial. Similarly, whether plaintiff Thomas Lee was negligent, and the extent to which that negligence may have contributed toward plaintiffs' damages, are issues of comparative negligence to be resolved through trial.

Accordingly, whether defendant officers are entitled to immunity from liability is not determinable at this time. Defendants' motions as to governmental immunity are DENIED.

### III. *42 U.S.C. § 1983*

All defendant officers seek summary judgment on counts VII and VIII—stating claims pursuant to 42 U.S.C. § 1983—arguing that they are entitled to qualified immunity from those counts and the allegations made therein. In count VII, plaintiffs allege that the defendant officers failed to protect plaintiff Thomas Lee while exercising constructive custody over him by ordering him to drive his car from the Pounds residence in an intoxicated state. In doing so, plaintiffs allege a violation of plaintiff Thomas Lee's fifth and fourteenth amendment right to substantive due process, depriving him of his liberty interests in: (1) freedom from bodily harm; (2) the ability to act on his own behalf and for his own protection; (3) not being ordered by state authorities to commit an illegal act; and (4) the right to remain as a social guest at a private residence. In count VIII, plaintiffs allege that the defendant officers failed to exercise due care in ordering plaintiff Thomas Lee to drive his car without ensuring that he was not intoxicated. This activity, claim plaintiffs, was violative of plaintiff Thomas Lee's fifth and fourteenth amendment right to procedural due process. Defendant officers each argue that they are entitled to qualified immunity because their

actions "were objectively reasonable, did not amount to gross negligence rising to the level of a constitutional violation, and ... [because] there was not a violation of a clearly established constitutional right." (Richfield defendants' MSJ at 25; Davison defendants' MSJ at 23).

## A. Substantive Due Process

### 1. Qualified Immunity

In defense of a claim brought pursuant to 42 U.S.C. § 1983, a state official exercising discretionary authority is entitled to immunity from suit except where the state actor's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Mackey v. Dyke*, 29 F.3d 1086, 1093–94 (6th Cir.1994). In performing this analysis, the Court must focus on the objective legal reasonableness of the official's actions in light of the legal rules which were "clearly established" at the time of the actions in question. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In doing so, the Court is not to look at broad, generalized statements of rights, but must consider the rights in a more particularized sense.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640 (citations omitted); *see also, Mackey*, 29 F.3d at 1094. "The relevant inquiry focuses on whether a reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his challenged action." *Poe v. Haydon*, 853 F.2d 418, 423 (6th Cir.1988), citing *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039.

To defeat defendants' claims of qualified immunity, plaintiffs must establish that defendant state officers deprived plaintiff Thomas Lee of a clearly established federal statutory or constitutional right while acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981); *Foy v. City of Berea*, 58 F.3d 227, 229–30 (6th Cir.1995). There is no dispute that the defendant officers all were acting under color of state law at the time of the incidents alleged by plaintiffs. Thus, the controlling question is whether their actions deprived plaintiff Thomas Lee of a federally secured right.

### 2. Clearly Established Constitutional Rights

The first step of the analysis is to determine whether plaintiffs have "asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). To survive a claim of qualified immunity within the context of summary judgment, the allegations and the facts proffered in support thereof must both " 'state a claim of violation of clearly established law' ... [and] 'create a genuine issue as to whether the defendant in fact committed those acts....' " *Russo v. Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992) (citations omitted). In response to a motion for summary judgment on the basis of qualified immunity, "the non-movant must allege facts sufficient to indicate that the act in question violated clearly established law at the time the act was committed." *Id.*

### a. Freedom From Bodily Harm

In their motions, defendants have challenged plaintiffs' § 1983 claims, arguing that their actions did not violate any clearly established federal law. In their arguments, defendants focus primarily upon the first two rights identified by plaintiffs which defendants have been accused of violating: the right to be free from bodily harm and the right to be allowed to act on one's own behalf and for one's own protection. (*See* Richfield defendants' MSJ at 27–33; Davison defendants' MSJ at 27–35). Although the parties identify these alleged rights using different labels, the standard to be used in disposition of this claim is clear.

In the very recent case of *Foy v. City of Berea*, 58 F.3d 227 (1995), the Sixth Circuit addressed in a very instructive fashion the constitutional effect of a state actor's conduct upon the safety of a citizen with which the state actor has come into contact:

> Every encounter between police officers and private individuals does not create a "special relationship" that imposes an affirmative duty on the officers to protect those individuals from harm subsequently inflicted upon them by private parties. The Supreme Court has stated that "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974)). The Court has also recently reminded us that it "has always been reluctant to expand the concept of substantive due process." *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels*, 474 U.S. at 331, 106 S.Ct. at 665.

*Foy*, 58 F.3d at 232. Thus, plaintiffs' substantive due process claims rise or fall on the intent or deliberateness of defendant officers in their conduct toward plaintiff Thomas Lee. The *Foy* case is particularly instructive as to the issues involved in the present case.

In *Foy*, the plaintiff brought suit as the Administratrix of the Estate of Terry A. Foy against the City of Berea, Ohio, and individual police officers involved in the events that led up to Foy's death. On May 2, 1990, Foy and a friend drove from Crestline, Ohio to Cleveland to watch a Cleveland Indians baseball game. On the way, the two stopped at Baldwin–Wallace College in Berea, Ohio to pick up another friend. During the excursion, the participants consumed an excessive amount of beer: in the car, at the game, and at several bars afterward. The three returned to Baldwin–Wallace College in the early morning of May 3, 1990, where they apparently intended to stay the night.

Unfortunately, trouble arose when resident assistants at the dormitory hall came to question the three revelers about a false fire alarm. The resident assistants called college security for support, who in turn apparently summoned the three defendant city police officers. Upon their arrival, the defendants found Foy, his two friends, the resident assistants, and two college security guards in a parking lot near the dormitory. "Although the officers concluded Foy and [his friend] Phillips had been drinking, they did not determine the exact level of their intoxication. The security guards told the officers that the two visitors were loud and obnoxious and were causing a disturbance." *Id.* at 228. The police officers then ordered Foy and Phillips to leave the campus. The officers allegedly pointed at Foy and said "'Get in your car and get out of here or somebody is getting arrested.'" *Id.* at 229.

Phillips, who was driving his car, testified that when confronted by the police he did not believe himself to be intoxicated and did not believe his ability to drive was impaired. The pair drove for approximately 45 minutes before stopping at a rest area. "Shortly after resuming their journey, their car struck a tractor trailer and then hit the roadway's cement divider. Foy died as a result of the collision." *Id.* After the accident, it was determined that Phillips had a blood alcohol level in excess of the legal limit.

In *Foy*, the Court of Appeals affirmed the district court's dismissal, holding that:

> On May 3, 1990, neither the Supreme Court nor this court had held that police officers commit a substantive due process violation if, after receiving complaints from the owner of property that intoxicated persons are causing a disturbance on that property, the officers command these individuals to leave the property and the intruders are injured later by their own actions or those of other private parties. In fact, we find no controlling authority holding that such action by police under gener-

ally similar circumstances would constitute a due process violation.

*Id.*

■ In the present matter, the facts are slightly, yet significantly, different. Here, it is claimed that plaintiff Thomas Lee was intoxicated at the time that he was ordered to leave the Pounds residence in his car. The most notable distinctions of fact are that plaintiff Thomas Lee allegedly told the officers that he was too intoxicated to drive and that the owner of the property did not request police action to quell any disturbance the party guests may have been causing.

In *Foy,* the court reasoned that

> the defendant police officers did nothing to prevent Foy from protecting himself. Foy and Phillips were free to pull into a local motel or get out of the car once they left the campus. The police did not command them to undertake the long journey back to Crestline, Ohio; only to leave the Baldwin–Wallace campus. The officers may have used bad judgment in telling Foy and Phillips to get in the car and leave, but this command was not an example of arbitrary exercise of the state's power. Neither Foy nor Phillips was ever in custody. No action of the officers deprived Foy and Phillips of the ability to care for themselves.

58 F.3d at 231–32. To the extent that defendant officers' conduct mirrored that of the officers in *Foy,* plaintiffs' claim certainly must fail. Defendant officers did nothing to prevent plaintiff Thomas Lee from protecting himself. Plaintiff Thomas Lee was free to stay the night at a friend's house or get out of the car once he left the Pounds residence. He could have let a friend drive him in his car. The police did not command him to undertake a long journey, only to leave the Pounds home. "The officers may have used bad judgment in telling [plaintiff Thomas Lee] to get in the car and leave," but to the extent that defendant officers acted intentionally, "this command was not an example of arbitrary exercise of the state's power." [5] Plaintiff Thomas Lee was never in custody,

nor was he deprived of the ability to care for himself.

While defendant officers' *intentional actions* toward plaintiff Thomas Lee clearly were not violative of this constitutionally protected interest, whether they acted with deliberate indifference toward his well-being is an issue still open for determination and, if so, there may have been a violation of plaintiff Thomas Lee's rights in that respect. The *Foy* court hinted that where a special relationship does exist between a governmental actor and a private individual, a "plaintiff must demonstrate at least deliberate indifference to the injured party's needs in order to make out a substantive due process claim." *Id.* at 232 (citations omitted) (analogizing such situations with injuries suffered by one prison inmate at the hands of another). Taking the definition of deliberate indifference from *Farmer v. Brennan,* —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the court stated that: "It is more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.' *Id.,* at ——, 114 S.Ct. at 1978." *Foy,* 58 F.3d at 232.

The court concluded that:

> Neither the Supreme Court nor this court has announced a clearly established right of persons not in custody or incarcerated to recover for a substantive due process violation because the police permitted them to go on their way after a brief encounter. *A person injured by his own actions or those of other private persons after the encounter with the officers has ended must demonstrate at least deliberate indifference on the part of the officers.*

> The only deliberate decision of the officers in this case was to end the disturbance caused by Foy and Phillips by giving them the choice of leaving the Baldwin–Wallace campus voluntarily or submitting to arrest. The officers did not require them to leave Berea, Ohio and venture onto the highway where they were involved in an accident approximately one

---

**5.** It should be noted that this discussion is only relevant to plaintiffs' asserted right to freedom from bodily harm. Other alleged deprivations of

plaintiff Thomas Lee's substantive due process rights are addressed separately in this opinion.

hour later. We agree with the district court that no special relationship between the officers and Foy arose from the encounter. This being so, the officers had no affirmative obligation to take steps that would protect Foy and Phillips from possible danger of injury after they left the campus.

*Id.* (emphasis added).

Clearly, given the holding in *Foy*, plaintiffs cannot support their theory of constructive custody. It is possible, however, that a special relationship existed between plaintiff Thomas Lee and defendant officers such that they owed an affirmative constitutional duty to protect him from bodily harm caused by his own actions. While plaintiffs have some evidence of negligence—possibly even gross negligence—there is no evidence that the officers intentionally took action to harm plaintiff Thomas Lee. Moreover, that plaintiff Thomas Lee was ordered to vacate the premises does not constitute a custodial situation giving rise to a special relationship and a duty on the part of the police officers to prevent injury to plaintiff Thomas Lee either from himself or third persons. *Id.* at 231. Nevertheless, if the Michigan incapacitated persons statute, M.C.L. § 333.6501, applies, such statute may have given rise to a special relationship through which defendant officers possessed a duty to protect plaintiff Thomas Lee's well-being.

If the statute applies (*see* discussion, *supra* at II.A.) then the question arises whether defendant officers acted with deliberate indifference to plaintiff Thomas Lee's special needs due to his asserted intoxication. Whether defendant officers were deliberately indifferent to plaintiff Thomas Lee's ability to drive is a question in dispute which must be resolved through trial. This question must turn, however, on defendant officers' state of mind. If they believed that plaintiff Thomas Lee was lying and was not really unable to drive, then their actions may merely have been negligent, even grossly so. If they were uncertain and acted with indifference by failing to make that determination,

that would constitute deliberate indifference. This issue precludes summary judgment on plaintiffs' claim of deprivation of plaintiff Thomas Lee's interest in freedom from bodily harm.[6] Lacking intent to injure, should the Court determine there was no special relationship or deliberate indifference to whether plaintiff Thomas Lee sustained injury, plaintiffs' § 1983 claims will be dismissed at that time. *Id.* at 232; *Lewellen v. Metropolitan Gov't of Nashville and Davidson County, Tenn.,* 34 F.3d 345, 351 (6th Cir. 1994).

### b. *Order To Violate State Law*

Previously in this case, the Court held that if defendant officers ordered an intoxicated minor to drive his car off the premises—thus, ordering him to violate state law—that act would be unconstitutional. Memorandum Opinion and Order of June 9, 1992 at 6. The police conduct in the present matter is strikingly similar to that involved in *Foy*. Both the deceased and the driver in that case were observed by the police to be intoxicated. *Foy*, 58 F.3d at 228. And the police allegedly ordered them to "Get in your car and get out of here or somebody is getting arrested." *Id.* at 229. Despite these egregious facts, the Court of Appeals held that no special relationship arose out of Foy's brief encounter with the police, and there was neither a deliberate intent to injure nor deliberate indifference to Foy's rights which could be said to shock the conscience of the Court. *Id.* at 232. As noted by the court in *Foy*, "[t]he only deliberate decision of the officers ... was to end the disturbance" by giving the plaintiffs the choice of leaving the premises or submitting to arrest. *Id.* While it is extremely tempting to apply that conclusion to this case as well, there are certain factual disputes that make such a pretrial resolution inappropriate.

The controlling issue in whether defendants violated plaintiff Thomas Lee's constitutional rights is their state of mind. If defendants intentionally ordered plaintiff Thomas Lee to violate the law, that would be a constitutional violation. Likewise, if the

6. The Court notes that this claim will survive for trial only if the special relationship giving rise to a heightened duty on the part of the police is established through defendant officers' duty to enforce the Michigan incapacitated persons statute, as indicated herein, *supra*.

officers displayed deliberate indifference to whether their actions would cause plaintiff Thomas Lee violate the law, and yet ordered him to do so, that too would be a violation of his rights. In this case, there is no direct evidence that defendants knew plaintiff Thomas Lee was intoxicated beyond the legal limit. Nevertheless, the evidence proffered by plaintiffs could possibly support the inference that plaintiff Thomas Lee's level of intoxication was so obvious and extensive as to convey such knowledge to defendant officers and, if they indeed ordered plaintiff Thomas Lee to drive in that condition, knowing that it was illegal for him to do so, that would be a violation of his substantive due process rights.

This is not an obvious conclusion. At first blush, defendants' conduct herein appears no more egregious than that undertaken by the *Foy* defendants when they ordered the intoxicated minors to leave in their car or be arrested, the same choices given to the Pounds' party guests. The crucial difference, however, is that in *Foy* even the driver did not believe that he was intoxicated beyond the legal driving limit, whereas plaintiff Thomas Lee allegedly attempted to convince defendant officers of his intoxicated state. Defendants, for their part, argue that despite plaintiff Thomas Lee's assertions, they did not believe he was unable to drive; rather, they believed that he only sought to remain at the Pounds residence. Whether plaintiffs produce enough evidence to support their inference at trial remains to be seen. But the Court does not feel it proper to decide this factual question on summary judgment. Defendant officers are not entitled to qualified immunity on summary judgment because there are two identified issues of fact remaining for adjudication. First, plaintiffs must prove that defendant officers knew for a fact that plaintiff Thomas Lee was intoxicated beyond the legal limit.[7] Second, plaintiffs must prove that defendant officers actually compelled plaintiff Thomas Lee to drive while intoxicated, and not merely gave him a choice to do so. If defendant officers conducted themselves in this manner, such conduct would shock the conscience of the Court and would be in violation of plaintiff Thomas Lee's right to substantive due process. Thus, in this respect, defendants' motions are DENIED.

#### c. *Order For Invitee To Vacate Private Property*

Finally, plaintiffs' last basis for their substantive due process claim is that defendants allegedly deprived plaintiff Thomas Lee of a right to remain as a social guest at a private residence. Cognizant of the historical reluctance of the courts to expand the concept of substantive due process, *Foy,* 58 F.3d at 232; *Collins,* 503 U.S. at 125, 112 S.Ct. at 1068, nevertheless, the Court finds that substantive due process encompasses a liberty interest in remaining on private property with the owner's consent. Despite this holding, however, the Court further finds that defendant officers are entitled to qualified immunity in this case because that constitutional right was not clearly established on September 30, 1989. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. In fact, the violation appears to be one the unconstitutionality of which a reasonable police officer might not be aware. *Poe,* 853 F.2d at 423. The Court suspects that this violation is a common practice by law enforcement officers in attempting to control large numbers of people who are creating a disturbance or have that potential. Nevertheless, that a practice is common does not make it proper or legal. While this practice might be legal when the gathering occurs on public property, there is no basis for it to clear persons from private property and such a practice is unconstitutional.

In a situation like that present at the Pounds residence on September 30, 1989, the police may have the authority to issue a citation or make an arrest for excessive noise—assuming the existence of an applicable ordinance or law—or underage drinking.

---

7. It is not enough that defendant officers may have been negligent in failing to determine the level of plaintiff Thomas Lee's intoxication or "should have known" based upon his appearance that he was too intoxicated to legally drive. The order to drive must have been made with the deliberate intent to order plaintiff Thomas Lee to violate the law, *Russo,* 953 F.2d at 1043, or with deliberate indifference as to whether such an order would cause him to violate the law.

That does not give them the right, however, to order individuals to vacate private property where they are present with the owner's consent. While it is perhaps generous of law enforcement officers to allow persons engaged in such activities the option of leaving the premises in lieu of facing citation or arrest, when that option is in reality an order, then the police have overstepped their constitutional bounds.

■ This is not a case where the police entered onto private property at the request of the owner to quell a disturbance, as in *Foy*. In this case, plaintiffs contend that defendant police officers entered the Pounds residence and ordered all present to leave at once. Whether they actually ordered plaintiff Thomas Lee to leave or merely informed him that if he remained he would be arrested is a factual question disputed by the parties. If he was ordered to leave the premises, or if the choice was really no choice at all because the recipient of the offer was in no condition to comprehend that he might have remained on the property, that would constitute a substantive due process violation.[8]

■ In such a situation, it would be permissible for the police officers to issue citations for excessive noise or underage drinking, to cite the property owner, or even to arrest those in violation of the law. It likewise would be constitutionally permissible for the state actors to allow those present to leave on their own accord, even to avoid arrest. But where the officers order individuals to leave private property, without taking them into custody, that is a violation of a protected liberty interest. Whether the police conduct constitutes such an order, or

merely an option, is a factual issue that must be determined on a case by case basis. The Court notes that the conduct by the police in *Foy* to clear the premises was at the request of the property owner. Therefore, in that respect, that case is distinguished.[9]

### 3. Disposition Of Substantive Due Process Claims

Plaintiffs have identified three constitutionally protected liberty interests which they claim were violated by defendant officers: the right to freedom from bodily harm, the right not to be ordered to violate the law, and the right not to be compelled to vacate private property where present with the owner's consent. Each of these alleged rights are protected by substantive due process through the Fifth and Fourteenth Amendments. The first two claims raise questions of fact to be determined at trial. As to those claims, summary judgment is DENIED to the extent indicated herein. As to the third claim, there is no evidence that the asserted liberty interest was clearly established at the time of its deprivation. As such, defendant officers are entitled to qualified immunity on that claim. Moreover, plaintiffs' claim to freedom from bodily harm fails in part to invoke constitutional protection, as indicated herein. Therefore, defendant officers are entitled to qualified immunity on the indicated aspects of those claims as well. For the foregoing reasons, plaintiffs' substantive due process claims against the individual officers (count VII) are DISMISSED IN PART. Only plaintiffs' claims that defendant officers violated plaintiff Thomas Lee's substantive due process rights by showing deliberate indifference to his

---

8. It must also be remembered that the intent of the officers is controlling, even if the plaintiff felt that he had no choice but to leave the premises, the officers must have intended that he do so, or have been deliberately indifferent as to whether he would do so, to have violated his constitutional rights. Substantive due process protects the individual against arbitrary government action, and only deliberate decisions or deliberate indifference of government officials to deprive a person of life, liberty, or property run afoul of this

constitutional protection. *Foy*, 58 F.3d at 232; *Daniels*, 474 U.S. at 331, 106 S.Ct. at 665.

9. The Court is concerned with an additional aspect of this claim that was not addressed by the parties: the source of defendant officers' right to enter private property and take control over those present. At the upcoming hearing, the parties shall be prepared to discuss and argue the legal justification for defendants' entry and their assumed authority over those present,

physical well-being [10] and by compelling him to commit a crime remain for trial.

### B. *Procedural Due Process*

In count VIII of their complaint, plaintiffs allege that defendant officers violated plaintiff Thomas Lee's right to procedural due process. This count was not sufficiently addressed by the parties in their initial briefs, but was raised at the hearing and was the subject of supplemental briefs. At this time, the Court is fully apprised of the arguments regarding the procedural due process claim and finds that the claim must be DISMISSED.

In their supplemental brief filed on May 9, 1995, plaintiffs argue that plaintiff Thomas Lee's procedural due process rights were violated both (a) when defendant officers ordered him to commit a crime by driving while intoxicated and (b) when he was subjected to pre-conviction punishment. (Plaintiffs' supp. brief at 3). In response, defendants argue that plaintiffs' procedural due process claim must fail because (1) plaintiffs have failed to plead and prove that state remedies are inadequate to provide him due process, and (2) the case law cited by plaintiffs provide no support for their position in this case.

The Due Process Clauses of the Fifth and Fourteenth Amendments protect an individual from government deprivation of life, liberty, or property without due process of law. To state a claim for procedural due process, a plaintiff must establish both that he has been deprived of life or property, or a constitutionally recognized liberty interest, and that such deprivation has been effected without due process. Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure, 2nd* § 17.1 (1992) at 579–80. The focus in a procedural due process claim, where one has been deprived of life, liberty, or property, is upon what process is due in the event of such a deprivation. *Id.* Merely stating that one has been deprived of a protected interest through an unauthorized government prac-

tice is insufficient to state a claim for procedural due process where the plaintiff has available to him state procedures which will provide a remedy for the deprivation. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Watts v. Burkhart*, 854 F.2d 839, 843 (6th Cir.1988).

### 1. *Order To Violate State Law*

Plaintiffs' first argument is based upon their unsupported conclusion that "[p]rocedural due process under the Fifth and Fourteenth Amendments bars the police from forcing someone to commit a crime." (Plaintiffs' supp. brief at 3). This Court has held that when a state official forces an individual to commit a crime, that constitutes a violation of substantive due process. This constitutional violation is based upon the existence of a liberty interest in not being compelled to commit a crime by a state official. In a case such as this, where a state actor allegedly engages in unauthorized conduct—either negligently or intentionally—which results in deprivation of a constitutionally protected interest, the plaintiff has been deprived of procedural due process only in the absence of state procedures adequate to remedy the injury inflicted. *Watts*, 854 F.2d at 842–43. In the Sixth Circuit, state procedures are presumed to be adequate, *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991), and the plaintiff has the burden to both plead and prove the inadequacy of such procedures, *Watts*, 854 F.2d at 843. The mere failure to plead inadequacy of state procedures subjects a procedural due process claim to dismissal. *Id.*

There is, initially, a question as to whether defendant officers' conduct as alleged by plaintiffs was unauthorized. Plaintiffs claim that the officers acted pursuant to a policy or custom of their respective police departments of breaking up teen parties and sending those present home. While the Court has found it a matter of disputed fact whether such a policy exists, the Court finds lacking any evidence of a policy or custom or an established procedure to intentionally compel

---

whether their authority was clearly established, and whether they acted within that authority.

**10.** This claim, however, is subject to the applicability of the intoxicated persons statute, *see* discussion, *supra*.

intoxicated minors to illegally operate motor vehicles.[11] Thus, if any of the defendant officers ordered plaintiff Thomas Lee to drive his automobile in an intoxicated state, then that action would be an unauthorized one.

Despite defendants' assertions in their respective motions, plaintiffs have pleaded an absence of adequate state remedial procedures to guarantee due process; however, plaintiffs have failed to support this pleading. The Court finds that state tort law does provide a remedy to plaintiff for the conduct allegedly engaged in by defendant officers. In fact, plaintiffs are pursuing such claims as a part of this lawsuit. Therefore, the Court finds at least as to plaintiffs' claim that defendant officers allegedly ordered plaintiff Thomas Lee to drive his automobile in an intoxicated state, thus violating state law, that the claim must fail as adequate state procedures exist to guarantee due process for any injury sustained as a result of that conduct.

### 2. Pre–Conviction Punishment

Plaintiffs' second basis for their procedural due process claim also must fail. Plaintiffs allege that defendant officers unconstitutionally inflicted upon plaintiff Thomas Lee preconviction punishment. First, the Court notes that despite plaintiffs' unsupported conclusion, there is no evidence whatsoever that defendant officers forced plaintiff Thomas Lee to drive while intoxicated as punishment. There is no evidence that defendant officers had any malicious or punitive intent in allegedly ordering plaintiff Thomas Lee to drive his car. This is true even if plaintiffs can establish that defendant officers knew for a fact that plaintiff Thomas Lee was intoxicated beyond the legal limit. Second, this alleged violation also was one not authorized by any government procedure, for which plaintiffs were required to plead and prove that state remedies are inadequate. For the same reasons as stated

above, on this basis too plaintiffs' procedural due process claim must fail. Count VIII of plaintiffs' complaint is, therefore, DISMISSED.

### C. Municipal Liability

Finally, both municipal defendants seek summary judgment on plaintiffs' claims against them, arguing that there is no evidence of a policy or custom, or a failure to train the police officers involved, which led to any violation of plaintiff Thomas Lee's constitutional rights. Plaintiffs oppose, asserting that there is a question of fact as to the existence and content of the municipal defendants' policies regarding teenage drinking parties and whether the municipalities provide adequate training to deal with those situations. Because the Court finds that there remain factual questions material to both of these issues, with respect to municipal liability the motions are DENIED at this time.

When a municipality itself is the cause of a constitutional deprivation, § 1983 liability may lie against the municipality. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). The municipality may not be held liable under § 1983 on the basis of *respondeat superior*, however, but only when the constitutional injury is inflicted by the execution of the government's policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). The municipality's policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38). To satisfy the requirements for establishing municipal liability, the plaintiff must: (1) identify a municipal policy; (2) establish that the municipality is responsible

---

**11.** The only policy identified by any of the potential witnesses in this case is to allow the officers at the scene to exercise discretion in determining the best course of action. While this policy or the customary manner of its enforcement may lead to negligent decisions of the responding officers, it is not in and of itself unconstitutional. There is no evidence of a policy allowing officers to exercise their discretion to compel or even allow an intoxicated individual to drive an automobile.

for promulgating the policy; and (3) show that execution of the policy caused the injury of which the plaintiff has complained. *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir.1994); *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir.1987). A plaintiff can establish the existence of a municipal policy or custom in two ways: (1) a decision-maker with final authority regarding the matter at hand issues an official proclamation, policy, or edict; or (2) a custom is established through a course of conduct when, though not authorized by law, such practices of municipal officials are so permanent and well settled as to virtually constitute law. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990). When the plaintiff attempts to prove the existence of a custom through a course of conduct, the question necessarily is a factual one, often requiring presentation to the finder of fact at trial. The existence of a governmental custom, its parameters, and whether a custom was practiced in an individual case are determinations left for the trier of fact—in this case, the jury. *Gregory v. City of Rogers, Ark.*, 921 F.2d 750, 757 (8th Cir.1990).

### 1. *Identified Constitutional Deprivations*

 In this case, plaintiffs seek to establish municipal liability against the police departments of both Richfield and Davison Townships. As with any claim brought under § 1983, any potential liability may lie only for deprivation of federal statutory or constitutional rights. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Previously in this opinion, the Court has held that plaintiffs have identified three possible substantive due process violations by defendant officers: deprivation of plaintiff Thomas Lee's liberty interests in freedom from bodily harm, in not being compelled to violate the law, and in not being compelled to leave private property where present with the owner's consent. Although the third right was not clearly established at the time of commission, a municipality is not entitled to qualified immunity as is an individual state defendant. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 365 (6th Cir.1993) (municipality may not escape § 1983 liability merely because officer who committed violation entitled to qualified immunity). Therefore, if a policy or custom of either municipal defendant was a cause of any of these alleged constitutional deprivations, that municipality would be liable for any injury resulting therefrom. *City of Canton*, 489 U.S. at 385, 109 S.Ct. at 1203; *Polk County*, 454 U.S. at 326, 102 S.Ct. at 454.

### 2. *Municipal Policy Or Custom*

 Plaintiffs seek to establish a municipal policy or custom through expert testimony and reliance upon police call sheets from the two to three years preceding the incident giving rise to this lawsuit, as well as the testimony of several police officers from each township. While plaintiffs' claim may not survive a directed verdict motion after presentation of plaintiffs' case at trial, at this time the Court believes the evidence proffered is sufficient to withstand summary judgment. The evidence proffered presents questions of fact as to whether either or both township police departments have a policy or custom when responding to nuisance or excessive noise complaints of compelling all present to vacate the property without regard to the level of their intoxication or whether they are legally on the premises.[12] There also is a factual question as to whether defendant officers acted in conformity with such a policy in this case, and, if so, what injuries resulted as caused by such unconstitutional conduct.[13]

---

12. The Court notes that plaintiff's evidence with regard to the municipal defendants' treatment of intoxicated persons is not particularly strong. Nevertheless, testimony regarding defendants' policies in this area shall be taken at trial and the content of defendants' policies will be determined at that time. At present, it seems that defendants' policies are to allow their officers discretion in dealing with individuals encountered on private property engaging in celebratory activity, including determining whether they are intoxicated. This policy would not be unconstitutional on its face, but if improperly administered on a continuing basis may give rise to a claim against defendant municipalities for failure to adequately train their officers to implement the policy.

13. The Court notes that even if plaintiffs establish the existence of such a policy plaintiffs still have a significant burden of proving the injuries

### 3. *Failure To Train*

Plaintiffs also seek to establish municipal liability through a failure to train claim. In order to state a claim under § 1983 against a municipality for a failure to adequately train its officers, it is not necessary that the policy itself be unconstitutional. *Collins,* 503 U.S. at 123, 112 S.Ct. at 1067. Indeed, merely because a policy is constitutional does not preclude § 1983 liability against a municipality when the municipality has failed to adequately train its employees or agents to implement the policy in a constitutional manner. *Berry v. City of Detroit,* 25 F.3d 1342, 1346 (6th Cir.1994). If a municipal employee "violates another's constitutional rights, the [municipality] may be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation." *Collins,* 503 U.S. at 123, 112 S.Ct. at 1068, 117 L.Ed.2d at 272. Inadequate training is the cause of a constitutional tort, however, only if "the failure to train amounted to 'deliberate indifference' to the rights of persons with whom [municipal employees] come into contact." *Id.*

The elements of municipal liability for failure to train require that: (1) the training program is inadequate to the tasks that the municipal actor must perform; (2) the inadequacy is the result of the municipality's deliberate indifference; and (3) the inadequacy caused the plaintiff's constitutional injury. *Berry,* 25 F.3d at 1346.

### a. *Inadequate training program*

In a failure to train case, the focus must be upon the "adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton,* 489 U.S. at 390, 109 S.Ct. at 1206. It is not enough to establish that a particular officer was inadequately trained, or that there was negligent administration of an otherwise adequate program, or that the conduct resulting in the injury could have been avoided by more or better training. *Id.* at 390–91, 109 S.Ct. at 1206. The plaintiff must identify a specific deficiency which is the actual cause sustained by plaintiff Thomas Lee were caused

of the constitutional deprivation. *Id.* at 390, 109 S.Ct. at 1206.

### b. *Deliberate Indifference*

Once the plaintiff has identified a specific training deficiency, the plaintiff must establish that the inadequacy is the result of deliberate indifference. The deliberate indifference standard is not a " 'state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right.' " *Farmer,* —— U.S. at ——, 114 S.Ct. at 1981 (quoting *Daniels,* 474 U.S. at 330, 106 S.Ct. at 664). Rather, it is a test "employed to determine when 'inadequate training can justifiably be said to represent city policy.' " *Garner,* 8 F.3d at 365 (quoting *City of Canton,* 489 U.S. at 390, 109 S.Ct. at 1205) (internal quotations omitted). Liability under § 1983 is appropriate against a municipality "when policymakers are 'on actual or constructive notice' of the need to train," *Farmer,* —— U.S. at ——, 114 S.Ct. at 1970 (quoting *City of Canton,* 489 U.S. at 396, 109 S.Ct. at 1208 (O'Connor, concurring in part and dissenting in part)), and yet fail adequately to do so.

It is not necessary that a municipality enact a formal policy when there exists an unconstitutional custom that amounts to a policy. *Berry,* 25 F.3d at 1345. A plaintiff is not required to produce evidence of a deliberate or conscious choice by the municipality to adopt an unconstitutional policy or custom. *Id.* at 1346. Rather, as the Supreme Court has indicated,

> it may happen that in light of the duties assigned to specific officers or employees *the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,* that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes the injury.

by this deprivation of liberty.

*Id.* (quoting *City of Canton,* 489 U.S. at 390, 109 S.Ct. at 1205 (footnote omitted)).

### c. *Causation Of Constitutional Injury*

 Finally, the inadequacy must be the actual cause of a constitutional injury suffered at the hands of a municipal employee. The plaintiff must prove both that he suffered a constitutional injury and that it resulted from the identified training deficiency.

### d. *Questions Of Material Fact*

 In this case, plaintiffs allege that both municipal defendants lack adequate training of their police officers to exercise the discretion delegated to them to appropriately deal with possible intoxicated minors present at a private party. Plaintiffs contend that the officers are not adequately trained to determine the level of intoxication of those present or whether to allow them to remain on the property or to vacate the premises in either a sober or intoxicated state. Whether the evidence proffered is sufficient to establish a policy of deliberate indifference to plaintiff Thomas Lee's substantive due process rights is dependent upon the testimony introduced at trial. Moreover, the causal connection between any training deficiency and any constitutional injury to plaintiff Thomas Lee is a question of fact to be determined through trial. There being questions of material fact regarding every facet of this claim, the claim is not ripe for summary judgment and the motion is DENIED as to plaintiffs' failure to train claim.

### IV. *Disposition*

For the reasons stated herein, defendants' motions (D.E. #143 and D.E. #145) are GRANTED IN PART and DENIED IN PART.

With regard to plaintiffs' state law tort claims, the motions are DENIED, and defendant officers are not entitled to governmental immunity at this time.

With regard to plaintiffs' claims under 42 U.S.C. § 1983, the motions are GRANTED IN PART and DENIED IN PART. To the extent that plaintiffs assert claims for deprivation of substantive due process liberty interests in (1) being allowed to act on one's own behalf for one's own protection and (2) not being compelled to vacate private property where present with the owner's consent, the motions are GRANTED as to defendant officers, who are entitled to qualified immunity on those claims (count VII). With regard to plaintiffs' substantive due process claim, asserting interests in (1) freedom from bodily harm and (2) in not being compelled to violate state law, the motion is DENIED (count VII).

With regard to count VIII, the motion is GRANTED. Plaintiffs' claims alleging a violation of procedural due process are DISMISSED.

With regard to municipal liability under 42 U.S.C. § 1983 (*count IX*), the *motion* is GRANTED IN PART and DENIED IN PART. To the extent that plaintiffs assert municipal liability for violation of their substantive due process liberty interests in (1) freedom from bodily harm, (2) not being compelled to vacate private property where present with the owner's consent, and (3) not being compelled to violate state law, the motion is DENIED. In all other respects, the motion is GRANTED and count IX is DISMISSED.

SO ORDERED.