Cynthia D. FOY, Administratrix of the Estate of Terry A. Foy, deceased, Plaintiff–Appellant,

v.

CITY OF BEREA; James H. Hinners; M. Schultz; Robert Surgenor; Bruce Merwin, Defendants–Appellees.

No. 94–3200.

United States Court of Appeals, Sixth Circuit.

Argued April 10, 1995.

Decided June 22, 1995.

Douglas S. Roberts, Clark, Perdue & Roberts, Columbus, OH, Michael J. Skindell (argued and briefed), Garson & Associates Co., L.P.A., Cleveland, OH, for plaintiff-appellant.

John T. McLandrich (argued and briefed), James A. Climer, Mazanec, Raskin & Ryder, Cleveland, OH, for City of Berea, James H. Hinners, M. Schultz, Robert Surgenor and Bruce Merwin.

Before: MERRITT, Chief Judge; LIVELY and KEITH, Circuit Judges.

## AMENDED OPINION

LIVELY, Circuit Judge.

The plaintiff appeals from summary judgment for the defendants and dismissal of her claim that the defendants violated the substantive due process rights of the plaintiff's decedent. The plaintiff alleged that the individual defendants, who are police officers of the city of Berea, Ohio, deprived Terry Foy of a liberty interest—"the right to be free from arbitrary and unjustified intrusion into his personal security." (Complaint, J.App. 12) The district court held the plaintiff failed to demonstrate that the defendants' conduct on the occasion complained of violated a clearly established constitutional right. We agree, and affirm the judgment.

## I.

On May 2, 1990, decedent Terry Foy and a friend, David Phillips, traveled from their homes in Crestline, Ohio to Cleveland, Ohio to see a Cleveland Indians baseball game. After picking up a twelve-pack of beer to drink on the way, the two drove in Phillips's car to Baldwin–Wallace College in Berea, Ohio. There, they picked up another friend, Brian Wiley, and then continued toward Cleveland, buying more beer on the way.

During their trip and during the game, the three continued to drink beer. After the game, they finished their own supply of beer and drank several more at bars in Cleveland and Berea. In the early morning hours of May 3, 1990, the three drove to Brian Wiley's Baldwin–Wallace dormitory hall. Foy and Phillips apparently intended to stay there and rest, rather than return immediately to Crestline.

Their stay was cut short, however, when resident assistants at the dormitory hall came to Wiley's room to question the three about a false fire alarm. The resident assistants called Baldwin–Wallace Security for support. When Berea City Police Officers Mark Schultz, Robert Surgenor and Bruce Merwin, who are defendants in this case, eventually arrived at the scene, they found the resident assistants, two security guards, Foy, Phillips and Wiley in a parking lot near the dormitory. Although the officers concluded Foy and Phillips had been drinking, they did not determine the exact level of their intoxication. The security guards told the officers that the two visitors were loud and obnoxious and were causing a disturbance. According to Phillips the police officers then ordered him and Foy to leave the campus. Phillips testified by deposition as follows:

[Examination by defendants' attorney]

Q. What did the police say to you in response to that?

A. Well, they didn't really say anything.

They said—you know, I mean, they couldn't prove that we had done it, and they told Terry, they pointed at Terry and said get in your car, somebody get in your car and get out of here or somebody is getting arrested.

\*   \*   \*   \*   \*   \*

Q. And they said to Terry, "Get in your car, or somebody is going to be arrested"?

A. Yes. They said, "Get in your car and get out of here or somebody is getting arrested."

Phillips also testified that he did not believe he was intoxicated when he was confronted by the police and he did not believe his ability to drive was impaired.

Foy and Phillips then left in Phillips's car, with Phillips driving. After traveling for approximately 45 minutes, they stopped at a rest area. Phillips explained he was "having trouble staying awake." Shortly after resuming their journey, their car struck a tractor trailer and then hit the roadway's cement divider. Foy died as a result of the collision. When tested after the accident, Phillips's blood alcohol content was found to be .11, which is over the legal limit.

Although the plaintiff's complaint sought recovery under several different theories, she voluntarily dismissed all remaining claims and appeals only from summary judgment on the due process claim. Thus, the only question before us is whether the district court ruled correctly in holding that the defendant officers were entitled to qualified immunity.

## II.

The plaintiff sued under 42 U.S.C. § 1983 (1988). In order to prevail in a section 1983 action, the plaintiff must prove that some conduct by a person acting under color of state law deprived the plaintiff (or her decedent) of a right secured by the Constitution or other federal laws. There was no question in this case that the defendants acted under color of state law. The only question was whether their actions deprived Terry

Foy of a federally secured right. We review the district court order granting summary judgment de novo.

█ Although the parties disagree as to the evidence concerning Foy and Phillips's degree of intoxication and the exact words of the officers in ordering them to leave the Baldwin–Wallace premises, nevertheless, we conclude the case was ripe for summary judgment because there were no genuine issues of material fact to be resolved by a jury. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Viewing all the evidence and reasonable inferences therefrom in a light most favorable to the plaintiff, we agree with the district court that the defendants were entitled to summary judgment. On May 3, 1990, neither the Supreme Court nor this court had held that police officers commit a substantive due process violation if, after receiving complaints from the owner of property that intoxicated persons are causing a disturbance on that property, the officers command these individuals to leave the property and the intruders are injured later by their own actions or those of other private parties. In fact, we find no controlling authority holding that such action by police under generally similar circumstances would constitute a due process violation.

## III.

The plaintiff argues that both the Supreme Court and this court have established the right she seeks to vindicate. She relies principally on *DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), and *Nishiyama v. Dickson County, Tenn.,* 814 F.2d 277 (6th Cir.1987). Recognizing that the facts in the two cited cases are quite different from those in the present case, she argues that the decisions established a "legal rule" that covers the facts now before us. Citing *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992), she asserts it was clearly established that conduct of a state employee "may be so egregious that a reasonable person would know it to be unconstitutional." Thus, she argues, a plain-

tiff is not required, in order to demonstrate a clearly established right, to show that "the very action in question has been held unlawful." (quoting *Eugene D. v. Karman*, 889 F.2d 701, 706 (6th Cir.1989), *cert. denied*, 496 U.S. 931, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990)). We do not disagree with these statements, but conclude they do not require a different view of this case than that adopted by the district court.

### A.

*DeShaney* involved a section 1983 action against a local Department of Social Services brought by the mother of a young child. The child's father, who had custody of the boy, severely beat and permanently injured the child. The mother alleged the state had not removed the child from the father's custody, even though state employees had been informed that the father was abusing the child. The mother argued that the special relationship between child and state rendered the state liable, even though the state itself did not expose the child to the danger of abuse, because the state knew of the danger to the child. *DeShaney*, 489 U.S. at 191–93, 109 S.Ct. at 1001–02.

The *DeShaney* Court acknowledged that certain "special relationships" may give rise to an affirmative constitutional duty to protect a person's due process rights. However, the Court held no such duty existed in that case. It concluded that the state did not violate the child's right and explained that the Due Process Clause does not require the state to protect life, liberty and property against private acts of invasion. *Id.* at 195–203, 109 S.Ct. at 1002–07.

Mrs. Foy argues, however, that *DeShaney* established a due process requirement that the state protect a person from injury once it places that person in a position of danger the person otherwise would not have faced. She cites *Janan v. Trammell*, 785 F.2d 557 (6th Cir.1986) in support of her claim that the actions of the defendant police officers in this case created a special relationship between her husband and the state. *Janan* provides no support for the plaintiff here. In *Janan*, the family of a boy murdered by a parolee brought suit against the Parole Board. We

found that no special relationship existed in that case, and held that absent such a relationship, a plaintiff may not invoke the Due Process Clause as a basis for recovery. *Id.* at 560.

### B.

In *Nishiyama* we held that a special relationship existed between the victim, who was murdered by a convicted felon, and the sheriff's department that allowed this inmate who was in their custody to operate a sheriff's patrol car with their permission and without supervision. The dangerous inmate's unsupervised use of the patrol car provided him with both the opportunity and the means to stop the victim and kill her. The conduct of the sheriff was so egregious that the en banc court concluded it constituted a substantive due process violation. *Nishiyama* did not concern qualified immunity. The district court dismissed the section 1983 action for failure to state a claim upon which relief could be granted. In reversing, this court held the allegation that the sheriff acted with gross negligence "was sufficient to charge them with arbitrary use of government power." *Nishiyama*, 814 F.2d at 282.

*Nishiyama* has not been overruled; the court's decision was based on the outrageous conduct of the defendants. *Nishiyama* is no longer good law, however, insofar as it held that there was a special relationship between the victim and the sheriff's office and that gross negligence is sufficient to support a substantive due process claim. We note that subsequent Sixth Circuit decisions indicate that portions of *Nishiyama*'s holding may not have survived the Supreme Court's *DeShaney* decision. See *Nobles v. Brown*, 985 F.2d 235, 238 n. 1 (6th Cir.1992); also *Lewellen v. Metropolitan Gov't of Nashville and Davidson County, Tenn.*, 34 F.3d 345 (6th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 903, 130 L.Ed.2d 787 (1995). The *DeShaney* Court explained its conclusion that Social Services workers did not violate a young child's substantive due process rights by failing to protect the child from his father's violence by reference to earlier cases involving special relationships. Those cases, it noted, involved injuries suffered by per-

sons while in custody. See *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Those cases established a rule that a duty to protect arises "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." The affirmative duty to protect arises only when the state imposes limitations on an individual's "freedom to act on his own behalf." Mere knowledge of danger to the individual does not create an affirmative duty to protect. *DeShaney*, 489 U.S. at 200, 109 S.Ct. at 1005–06. The victim in *DeShaney* was not in official custody and thus there was no special relationship.

In addition, the plaintiff cites *Estate of Tittiger v. Doering*, 678 F.Supp. 177 (E.D.Mich.1988) and *Russell v. Steck*, 851 F.Supp. 859 (N.D. Ohio 1994) as support. In *Tittiger*, the court relied on *Nishiyama* to hold that a special relationship existed between the defendant police officer and the decedent, because the officer allegedly ordered the decedent, who was intoxicated, to ride his bicycle home from a party, rather than be driven. *Tittiger*, 678 F.Supp. at 180. The decedent died from injuries suffered when he was struck by a car while riding on a dark, narrow road. *Russell* involved a similar situation. An intoxicated person was ordered by a deputy sheriff to leave an inn where he caused a disturbance. Although the plaintiff argued that he was too drunk to drive, the deputy escorted him to his car and ordered him to leave the premises. While driving toward his home, the plaintiff was arrested for drunken driving. After being convicted, he sued the deputy claiming a due process violation. The *Russell* court relied on *Nishiyama* and *Tittiger* in finding a substantive due process violation consisting of "reckless indifference" to the risk created by the deputy's actions. *Russell*, 851 F.Supp. at 867.

To the extent that *Tittiger* is based upon a finding that a special relationship existed between the officer and the victim in circumstances where the officer had not deprived the victim of his ability to care for himself and upon conduct that only rises to the level of gross negligence, we reject its holding. *Russell* involved an even more attenuated conclusion that a special relationship existed, and we reject its holding as well.

## IV.

### A.

■ The Due Process Clause does protect individuals against unlawful governmental interference with their right to life, liberty and property. Except in very limited circumstances, however, it does not create an obligation on the state to protect individuals from injury to life, liberty or property caused by the acts of private parties, even though such injury might have been avoided by protective state actions. *DeShaney*, 489 U.S. at 196–97, 109 S.Ct. at 1003–04. When the state limits an individual's ability to care for himself by, for example, incarceration in a prison or involuntary confinement in a mental hospital, the Constitution does impose an affirmative duty of care and protection. There is no such affirmative duty, however, absent such restraint. "[I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.* at 199–200, 109 S.Ct. at 1005–06.

Here, the defendant police officers did nothing to prevent Foy from protecting himself. Foy and Phillips were free to pull into a local motel or get out of the car once they left the campus. The police did not command them to undertake the long journey back to Crestline, Ohio; only to leave the Baldwin–Wallace campus. The officers may have used bad judgment in telling Foy and Phillips to get in the car and leave, but this command was not an example of arbitrary exercise of the state's power. Neither Foy nor Phillips was ever in custody. No action

of the officers deprived Foy and Phillips of the ability to care for themselves.

■ Even in the cases involving injury to one prison inmate by another inmate, the plaintiff must demonstrate at least deliberate indifference to the injured party's needs in order to make out a substantive due process claim. *Id.* at 198–99 n. 5, 109 S.Ct. at 1005 n. 5 (citing *Whitley v. Albers,* 475 U.S. 312, 326–27, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986)). The Court defined "deliberate indifference" in *Farmer v. Brennan,* —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). It is more than mere negligence, but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at ——, 114 S.Ct. at 1978.

### B.

■ Every encounter between police officers and private individuals does not create a "special relationship" that imposes an affirmative duty on the officers to protect those individuals from harm subsequently inflicted upon them by private parties. The Supreme Court has stated that "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974)). The Court has also recently reminded us that it "has always been reluctant to expand the concept of substantive due process." *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels,* 474 U.S. at 331, 106 S.Ct. at 665.

Neither the Supreme Court nor this court has announced a clearly established right of persons not in custody or incarcerated to recover for a substantive due process violation because the police permitted them to go on their way after a brief encounter. A person injured by his own actions or those of other private persons after the encounter with the officers has ended must demonstrate at least deliberate indifference on the part of the officers.

The only deliberate decision of the officers in this case was to end the disturbance caused by Foy and Phillips by giving them the choice of leaving the Baldwin–Wallace campus voluntarily or submitting to arrest. The officers did not require them to leave Berea, Ohio and venture onto the highway where they were involved in an accident approximately one hour later. We agree with the district court that no special relationship between the officers and Foy arose from the encounter. This being so, the officers had no affirmative obligation to take steps that would protect Foy and Phillips from possible danger of injury after they left the campus. In *DeShaney* the state officials were aware of the specific danger to which the young child was exposed by being left with his father; yet, the officers were found not to be liable for that injury. We are aware of no authoritative case holding police or other officials liable because they fail to take affirmative steps to protect an individual from a more general possibility of harm.

### V.

### A.

In her complaint the plaintiff alleged that the police officer defendants "subjected Plaintiff's decedent to these deprivations of his rights [arbitrary and unjustified intrusion into his personal security] maliciously and intentionally or with a reckless disregard and deliberate indifference for the rights of Plaintiff's decedent." (J.App. 12) Neither the facts recited in the complaint nor those brought out in discovery supported the allegations of intentional deprivation of or deliberate indifference to the rights of the plaintiff's decedent. Thus, *the plaintiff clearly failed to carry her burden in response to the defendants' motion for summary judgment.*

Once the defendants produced the depositions of Phillips, Wiley and the officers in support of their motion for summary judgment, the burden of going forward shifted to the plaintiff to produce evidence demonstrating an issue of material fact to be resolved by

a jury. At this juncture, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The evidence, viewed most favorably to the plaintiff, described official conduct that fell short of deliberate indifference to the risk of serious harm, and thus did not violate Terry Foy's due process rights under any controlling precedent.

## B.

 Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The test for whether an official is entitled to qualified immunity is one of "objective reasonableness," which requires "a reasonably competent public official [to] know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The constitutional or statutory right alleged to have been violated must have been "clearly established" in a particularized sense:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations omitted).

The district court correctly decided the "purely legal question of whether the law at the time of the alleged action was clearly established in favor of the plaintiff." *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987).

The judgment of the district court is **AFFIRMED**.