73 F.3d 362
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 G.W. MCCOIG and Margaret H. Darnell, Plaintiffs-Appellants,
v.
JEFFERSON CITY, TENNESSEE, Randy Holt and Todd Loveday,
Defendants-Appellees.
 Nos. 94-6045, 94-6046.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1995.
 
 Before: MARTIN and JONES, Circuit Judges; and COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Margaret H. Darnell and G.W. McCoig appeal the grant of summary judgment for Jefferson City, Tennessee and two city police officers in this civil rights action alleging that the defendants deprived Darnell and McCoig's grown children of their lives without due process.
 
 I.
 
 2
 This case arises out of events that occurred on the night of December 3, 1992 and the early morning hours of December 4 in and around Jefferson City, Tennessee. Bronwen Darnell and Derrick McCoig were killed when Derrick, an intoxicated off-duty Jefferson City police officer, lost control of the car that he and Bronwen were riding in and drove off an embankment.
 
 
 3
 On the night of December 3, Jefferson City Police Officers Todd Loveday and Randy Holt were on routine patrol. They encountered Derrick early in their shift when he stopped by the police department to pick up a check, and again around 11:00 p.m. when they met him at a closed Shell Service Station. Derrick, who was off-duty, out of uniform, and in his personal car, consumed alcohol while talking to Loveday and Holt at the service station. While the officers were there, Bronwen, a friend of the officers, happened to drive by with her roommate and stopped to talk. The group eventually left the service station and headed in different directions.
 
 
 4
 Approximately forty minutes later, while on patrol, Holt encountered Derrick again. Derrick was parked on a street near the city garage, and Holt noticed that he had consumed approximately one-half of a bottle of liquor, his eyes were bloodshot, and his speech was slurred. Holt did not arrest Derrick, but instead contacted Loveday by radio and the two officers agreed to meet at the police department. The officers met at the station, covered the lens of a surveillance camera, and decided that Loveday would bring Derrick in for a breathalizer test while Holt would wait at the station.
 
 
 5
 By the time Loveday returned to Derrick's car, Derrick was asleep behind the wheel. Loveday radioed Holt and asked him to come to the scene. When Holt arrived, only one-quarter of the bottle of liquor was left, and Derrick was clearly intoxicated. The officers woke Derrick and told him to move to the passenger side of his vehicle. Loveday then left his police cruiser on the street and drove Derrick's car, with Holt following in his own cruiser, to the parking lot of Bronwen's apartment building. Loveday parked Derrick's car and left him in the vehicle while he went into Bronwen's apartment to ask that she drive Derrick home.
 
 
 6
 Although Loveday claimed that he took the car keys with him, Derrick started his car and was racing the engine when Loveday stepped back outside with Bronwen. Holt then blocked the driveway exit of the parking area with his cruiser and prevented Derrick from leaving. Loveday tried to reach for Derrick's keys in the ignition, but Derrick pulled his weapon out, and yelled at and threatened Loveday.
 
 
 7
 Loveday and Holt claimed that they directed Bronwen back to her apartment at that point. Whether Bronwen went all the way back inside is disputed, as is the manner in which she became a passenger in Derrick's vehicle. Thereafter, neither Loveday nor Holt requested any back-up assistance, and proceeded to leave the scene in Holt's patrol car with Derrick still behind the wheel of his vehicle. Minutes later, while traveling at a high rate of speed, Derrick lost control of his car, and both he and Bronwen were killed.
 
 II.
 
 8
 Following their children's deaths, Darnell and McCoig sued Jefferson City, Holt and Loveday under 42 U.S.C. Sec. 1983 and 28 U.S.C. Sec. 1331. Darnell and McCoig alleged that their children were denied due process and equal protection, and thereby suffered a deprivation of life, as a direct result of the customs and policies of the Jefferson City Police Department, and the actions of Holt and Loveday on the night of their deaths. Darnell and McCoig's initial complaints stated that they were suing Holt and Loveday in their official capacities. At the time the district court granted summary judgment for the defendants, a motion for judgment on the pleadings or, alternatively, a motion to dismiss, was pending by Holt and Loveday on the ground that they had been sued in their official capacities, and that official capacity actions are deemed to be the functional equivalent of actions against governmental entities. A second motion was pending that had been filed by Darnell and McCoig seeking to amend their original complaints to assert individual capacity actions against the two officers.
 
 III.
 
 9
 Summary judgment is appropriate under Fed.R.Civ.P. 56(c) if the record discloses "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An appellate court reviews a district court's grant of summary judgment de novo. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir.1991).
 
 
 10
 To state a claim under 42 U.S.C. Sec. 1983, a plaintiff must show that a defendant, acting under color of state law, deprived him or her of rights, privileges or immunities secured by the Constitution or laws of the United States without due process. A municipality can be sued under Section 1983 if actions taken pursuant to official municipal policy cause a constitutional tort. Monell v. Dept. of Social Services, 436 U.S. 658 (1978). Municipal liability will also attach under Section 1983 where a plaintiff can demonstrate the existence of a "custom" that causes a constitutional violation. Pusey v. City of Youngstown, 11 F.3d 652, 659 (6th Cir.1993), cert. denied, 129 L.Ed.2d 862 (1994). Darnell and McCoig have not been able to identify a policy, connect it to the city, or show that the deaths here were incurred because of the execution of that policy. See Garner v. Memphis Police Dept., 8 F.3d 358, 364 (6th Cir.1993), cert. denied, 127 L.Ed.2d 565 (1994). In addition, Darnell and McCoig are unable to show a sufficient link between city policy or custom and the actions at issue to establish that either was the "moving force" of any constitutional violation. Id. at 365.
 
 
 11
 Darnell and McCoig also sought to hold the city and the officers liable for failing to protect Bronwen and Derrick on the ground that a special relationship existed and/or because the officers increased the level of danger to the decedents. The general rule is that, although a state may not deprive an individual of life or liberty without due process of law, a state does not have an affirmative obligation to protect an individual's life and liberty interests from harm through other means or by other actors. DeShaney v. Winebago County Dept. of Social Services, 489 U.S. 189, 195 (1989). When the state "limits an individual's ability to care for himself by, for example, incarceration in a prison or involuntary confinement in a mental hospital, the Constitution does impose an affirmative duty of care and protection., There is no such affirmative duty, however, absent such restraint." Foy v. City of Berea, 58 F.3d 227, 231 (6th Cir.1995) (citing DeShaney, 489 U.S. at 199-200). In this case, neither the municipality nor the officers acting in their official capacities deprived Bronwen or Derrick of the "ability to care for themselves." Id. at 232. Because Darnell and McCoig failed to allege a violation of a clearly established constitutional right against Jefferson City or Holt and Loveday in their official capacities, we AFFIRM the district court's grant of summary judgment as to those claims.
 
 
 12
 We do believe, however, that a material factual dispute does exist with regard to the liability of Holt and Loveday in their individual capacities. Government officials can be held liable under Section 1983 in their individual capacities to the extent that they are not entitled to immunity. The test for determining whether an official is entitled to qualified immunity "is one of 'objective reasonableness,' which requires 'a reasonably competent public official to know the law governing his conduct.' " Foy, 58 F.3d at 233. Qualified immunity is not granted to those who are "plainly incompetent" or "knowingly violate the law." Id. (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)). In light of the evidence that Holt and Loveday failed to arrest Derrick; failed to administer a breathalizer test to him; covered the surveillance camera in the police station; left Loveday's cruiser on the street and drove Derrick to Bronwen's apartment; failed to call for back-up assistance to restrain Derrick; and eventually decided to abandon the scene at the apartment complex, we hold that a material factual dispute remains with regard to whether the officers acted under color of law to violate Bronwen and/or Derrick's civil rights. See Kentucky v. Graham, 473 U.S. 159 (1985) (stating that in an individual capacity suit, personal liability arises when an official is not acting in furtherance of a governmental policy but uses his or her badge of authority to violate an individual's civil rights).
 
 
 13
 When the district court granted summary judgment for the defendants on the ground that the plaintiffs failed to establish the breach of a constitutionally imposed duty, it ruled that all other issues were moot. We now hold that the district court tacitly granted Darnell and McCoig's motions to amend their complaints to assert a claim against the officers in their individual capacities when it granted summary judgment for Jefferson City and for Holt and Loveday in their official capacities. To reach the factual merits of the case, it was necessary for the district court to review the testimony of what transpired on that tragic night. We therefore REMAND that portion of this case that seeks to hold Holt and Loveday liable in their individual capacities.
 
 
 14
 AFFIRMED IN PART and REMANDED IN PART.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation